**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

**PAULA FISHER,**

Plaintiff,

v.

**STEWART INFORMATION SERVICES CORPORATION,**

Defendant.

United States Courts
Southern District of Texas
FILED
SEP 25 2026
Nathan Ochsner, Clerk of Court

**CIVIL ACTION NO. 4:26-cv-03267**

______________________________/

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff Paula Fisher ("Plaintiff"), proceeding pro se, files this First Amended Complaint against Defendant Stewart Information Services Corporation ("SISCO") pursuant to the Court's September 10, 2026 Minutes and Order (ECF No. 18), and alleges as follows:

## I. NATURE OF THE ACTION

1. This action concerns SISCO's own alleged conduct, undertakings, representations, enterprise systems, and transaction-processing infrastructure actually used in connection with the real-estate transaction underlying this action.

2. Plaintiff does not seek to impose liability upon SISCO merely because SISCO is the corporate parent of Stewart Title Guaranty Company ("STGC") or Stewart Title Company ("STC").

3. Plaintiff likewise does not seek to disregard corporate separateness, pierce the corporate veil, or impose upon SISCO a subsidiary's contractual obligations merely because affiliated Stewart entities share ownership, branding, financial interests, or corporate relationships.

4. Plaintiff instead seeks to hold SISCO directly liable for SISCO's own alleged conduct and undertaking.

5. Specifically, Plaintiff alleges that SISCO **owned, operated, and controlled the enterprise systems Virtual Underwriter® and Stewart Connect; those systems were actually used in Plaintiff's particular transaction; those systems incorporated underwriting and entity-validation requirements applicable to Plaintiff's transaction; and the transaction-specific approval communicated through those systems authorized the transaction to proceed despite the alleged failure to satisfy an expressly identified condition material to that approval.**

6. SISCO's involvement therefore was not limited to possessing corporate authority over affiliated title entities or having its corporate name or branding appear on transaction documents.

7. SISCO's very own systems were actually deployed in the underwriting and approval workflow governing Plaintiff's transaction.
8. The transaction-specific underwriting approval expressly incorporated Virtual Underwriter requirements and expressly required confirmation that the proposed LLC purchaser was in good standing in its state of incorporation.
9. Plaintiff knew before closing that the purchaser's entity information had been submitted through SISCO's Virtual Underwriter and Stewart Connect Systems for underwriting review and understood from the resulting approval that the required underwriting review had occurred and the transaction had obtained the approval necessary to proceed.
10. In reliance upon that approval, Plaintiff **allowed the closing to proceed**.
11. Plaintiff alleges that the approval was materially false or misleading because the transaction was represented through SISCO's Virtual Underwriter and Stewart Connect systems as having obtained the underwriting approval necessary to proceed when an expressly identified condition material to that approval had not been satisfied.

## II. PARTIES

12. Plaintiff Paula Fisher is an individual who was directly involved in and affected by the real-estate transaction described below.

13. Defendant Stewart Information Services Corporation is a Delaware corporation headquartered in Houston, Texas.

14. SISCO is a publicly traded corporation and the parent company of affiliated Stewart entities.

15. Stewart issued the $1,100,000 owner's title-insurance policy associated with the transaction.

16. Plaintiff does not allege that SISCO is liable merely because Stewart issued that policy.

17. Plaintiff alleges instead that SISCO independently owned, operated, and controlled Virtual Underwriter and Stewart Connect and that those enterprise systems were actually used in the underwriting and approval process governing Plaintiff's transaction.

## III. JURISDICTION AND VENUE

18. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

19. SISCO is incorporated in Delaware and maintains its principal place of business and corporate headquarters in Houston, Texas.

20. Plaintiff is a citizen of Florida.

21. The amount in controversy exceeds $75,000.

22. Venue is proper in the Southern District of Texas under 28 U.S.C. § 1391 because SISCO maintains its principal place of business in this District and is subject to personal jurisdiction here.

## IV. SISCO'S ENTERPRISE OPERATIONS AND AUTOMATED SYSTEMS

23. SISCO is the SEC registrant that filed Stewart Information Services Corporation's 2025 Form 10-K.

24. The 2025 Form 10-K states that, unless context indicates otherwise, the terms "we," "us," "our," the "Company," and "Stewart" mean **Stewart Information Services Corporation and its subsidiaries**.

25. SISCO describes Stewart Information Services Corporation as a global title-insurance and real-estate-services company offering products and services through direct operations, approved agencies, and other Stewart companies.

26. SISCO further reports that Stewart provides, among other things, **technology services to streamline the real-estate process**.

27. SISCO's 2025 Form 10-K states:

*"We have developed and acquired numerous automated products and processes that are crucial to both our title and real estate solutions operations."*

28. SISCO further states:

*"These systems automate most facets of the real estate transaction."*

**29.** Among the automated products and processes expressly identified in SISCO's filing is **Virtual Underwriter® and Stewart Connect.**

30. SISCO further describes its title segment as including the functions of searching, examining, closing, and insuring the condition of title to real property.

31. SISCO also represents that technology is material to its ability to address regulatory requirements, improve productivity, lower costs, reduce risk, and enhance the customer experience.

32. SISCO **owns, operates, and controls Virtual Underwriter and Stewart Connect**.

33. These systems form part of SISCO's enterprise infrastructure for processing, underwriting, approving, and governing real-estate transactions.

34. Virtual Underwriter and Stewart Connect were **actually used in Plaintiff's particular transaction**.

35. Plaintiff's claims therefore do not rest upon SISCO's status as a passive parent or upon the mere appearance of Stewart branding.

## V. THE UNDERLYING TRANSACTION

36. The transaction concerned real property located at **305 Eagles Pass, Alpharetta, Georgia 30004**.

37. The proposed purchaser and insured was **Catalyst REI, LLC**.

38. The requested owner's title-insurance amount was **$1,100,000**.

39. Before closing, Catalyst REI, LLC was required to complete and submit entity information, including a **Buyer's Statement of Information**, to the title operation systems Virtual Underwriter and Stewart Connect.

40. Plaintiff knew that this entity information was required as part of the transaction's title and underwriting process.

41. The purchaser's entity information was submitted to the title operation for processing and underwriting review.

**42.** Plaintiff alleges that the information was processed through the Virtual Underwriter and Stewart Connect infrastructure **owned and operated by SISCO.**

## VI. THE OVER-LIMITS UNDERWRITING REQUIREMENT

43. Because of the amount and circumstances of the transaction, the transaction was subject to an **over-limits underwriting process**.

44. The applicable over-limits requirements came directly from the Virtual Underwriter system.

45. The Virtual Underwriter over-limits materials expressly required underwriting approval before the transaction could proceed through the applicable underwriting process.

46. Thus, approval was not an incidental or optional component of this transaction.

47. The required underwriting approval was a prerequisite to the transaction proceeding through the applicable underwriting system Virtual Underwriter.

48. Plaintiff understood **before closing** that the transaction was subject to this underwriting approval process.

## VII. THE TRANSACTION-SPECIFIC STEWART CONNECT APPROVAL

49. Following submission and processing of the transaction and purchaser information, a transaction-specific Stewart Connect approval was issued.

50. The approval identified the property at 305 Eagles Pass, Alpharetta, Georgia.

51. It identified Catalyst REI, LLC as the proposed insured.

52. It identified the requested policy amount as **$1,100,000**.

53. It approved the requested **$1,100,000** amount.

54. The approval expressly incorporated Stewart's Underwriting Guidelines, including the requirements contained in Virtual Underwriter.

55. The transaction-specific approval from the automated systems expressly required:

***"Confirm the LLC buyer is in good standing in its state of incorporation."***

56. That requirement applied directly to Catalyst REI, LLC, the proposed insured identified in the same transaction-specific approval.

57. The condition was therefore not a generalized corporate policy unrelated to Plaintiff's transaction.

58. It was an express, transaction-specific entity-validation condition incorporated into the underwriting approval governing whether this particular transaction could proceed through the applicable underwriting process through the Virtual Underwriting System.

59. The resulting approval communicated the transaction's then-present underwriting status: **the required underwriting approval had been obtained and the transaction was approved to proceed through the**

**applicable underwriting process subject to the stated requirements and conditions.**

## VIII. PLAINTIFF'S KNOWLEDGE AND RELIANCE BEFORE CLOSING

60. Before the transaction closed, Plaintiff knew that Catalyst REI, LLC had been required to provide entity information to the title operation.

61. Plaintiff knew that the purchaser's entity information had been submitted for underwriting review.

62. Plaintiff knew that the transaction required underwriting approval through Virtual Underwriter and Stewart Connect before it could proceed through the applicable underwriting process.

63. Plaintiff understood that the purchaser's entity information had been processed as part of the underwriting and approval process through Virtual Underwriter and Stewart Connect.

64. Plaintiff further understood that the transaction had obtained the required underwriting approval.

65. Plaintiff understood from that approval that the transaction had cleared the underwriting process sufficiently to proceed subject to the requirements and conditions incorporated into the approval.

66. One of those expressly stated requirements was confirmation that Catalyst REI, LLC was in good standing in its state of incorporation.

67. **Plaintiff relied upon the resulting approval** as communicating that the required underwriting review and entity-validation process had been performed sufficiently for the transaction to proceed.

68. **Because the required underwriting approval had been obtained, Plaintiff allowed the closing to proceed.**

69. Had Plaintiff known that the expressly identified entity-validation condition concerning Catalyst REI, LLC had not been satisfied, Plaintiff **would not have allowed the closing to proceed**.

## IX. THE ALLEGED FAILURE OF THE EXPRESS APPROVAL CONDITION

70. Plaintiff alleges that the expressly identified requirement to confirm Catalyst REI, LLC's good standing in its state of incorporation was not satisfied before the transaction proceeded.

71. Nevertheless, the transaction proceeded to closing.

72. Plaintiff therefore alleges that the transaction was represented through the underwriting and approval process as having obtained the approval necessary to proceed when an expressly identified condition material to that approval had not been satisfied.

73. Plaintiff alleges that the failure was material because the condition was expressly included in the transaction-specific underwriting approval rather than being an unrelated or collateral matter.

74. Plaintiff further alleges that the approval communicated a then-existing transaction status—approval to proceed through the applicable underwriting process—rather than merely making a promise concerning something that might occur in the future.

## X. SISCO'S DIRECT AND ACTUAL INVOLVEMENT

75. SISCO's alleged liability is based upon its own conduct and undertaking, not merely its corporate relationship with STGC or STC.

76. SISCO owned, operated, and controlled Virtual Underwriter and Stewart Connect.

77. Those systems were actually used in Plaintiff's particular transaction.

78. The systems incorporated the underwriting requirements applicable to the transaction.

79. Virtual Underwriter supplied the applicable over-limits underwriting framework requiring approval.

80. Stewart Connect supplied the transaction-specific approval.

81. The transaction-specific approval expressly incorporated Virtual Underwriter requirements.

82. The transaction-specific approval expressly imposed the entity-validation condition concerning Catalyst REI, LLC.

83. The approval was then used to permit the transaction to proceed through the applicable underwriting process.

84. SISCO's alleged involvement was therefore **actual, transaction-specific, and operational**, rather than merely the possession of corporate authority over an affiliated entity.

85. Plaintiff does not ask the Court to attribute STGC's conduct to SISCO simply because SISCO owns STGC.

86. Plaintiff does not ask the Court to disregard corporate separateness.

87. Plaintiff does not predicate SISCO's liability merely upon unity of ownership, financial interest, shared branding, or the appearance of the Stewart name on transaction documents.

88. Plaintiff alleges that **SISCO's own enterprise systems were actually exercised and used in the transaction in a manner directly relevant to the undertaking at issue.**

## COUNT I

## NEGLIGENT UNDERTAKING

89. Plaintiff incorporates paragraphs 1 through 88 as though fully set forth herein.

90. SISCO undertook to own, operate, control, and provide enterprise automated systems and processes used to govern material aspects of title underwriting and real-estate transactions, including Virtual Underwriter and Stewart Connect.

91. SISCO's own public disclosures to the Government describe automated products and processes including Virtual Underwriter as crucial to title operations and state that such systems automate most facets of the real-estate transaction.

92. SISCO's undertaking was not merely theoretical or corporate in Plaintiff's case.

93. **Virtual Underwriter and Stewart Connect were actually used in Plaintiff's transaction.**

94. Through those systems, Plaintiff's transaction was subjected to an over-limits underwriting process requiring approval before the transaction could proceed through the applicable Virtual Underwriter System's underwriting process.

95. Through those systems, a transaction-specific approval was issued for Plaintiff's transaction.

96. That approval expressly incorporated Virtual Underwriter requirements.

97. That approval expressly required confirmation that Catalyst REI, LLC was in good standing in its state of incorporation.

98. SISCO therefore did more than merely possess authority over affiliated title entities.

99. Through systems SISCO owned, operated, and controlled, SISCO actually participated in the underwriting and approval infrastructure governing Plaintiff's transaction.

100. SISCO thereby undertook to perform functions necessary for the protection of participants affected by that underwriting process, including the processing and communication of transaction-specific underwriting and entity-validation requirements.

101. Having undertaken those functions, SISCO had a duty to exercise reasonable care in performing the undertaking.

102. SISCO failed to exercise reasonable care in performing that undertaking because the transaction was permitted to proceed through the underwriting and approval process notwithstanding the alleged failure to

satisfy the expressly identified condition requiring confirmation of the LLC purchaser's good standing.

103. SISCO's negligent performance increased the risk of harm by permitting a transaction to proceed through an approval system despite the alleged failure of a condition the system itself expressly identified as part of the approval.

104. Alternatively and additionally, Plaintiff relied upon the undertaking.

105. Plaintiff knew before closing that the transaction required underwriting approval and that the purchaser's entity information had been submitted for review.

106. Plaintiff understood that the required underwriting approval had been obtained through the Virtual Underwriter and Stewart Connect process.

107. Plaintiff relied upon that process and approval as communicating that the transaction had been reviewed and approved sufficiently to proceed subject to the requirements and conditions imposed through that process.

108. Because the required underwriting approval had been obtained, Plaintiff **allowed the closing to proceed**.

109. Had Plaintiff known that the expressly required entity-validation condition had not been satisfied, Plaintiff would not have allowed the transaction to close.

110. SISCO's alleged breach of the undertaking was a proximate cause of Plaintiff's resulting injury and pecuniary loss.

111. Plaintiff therefore seeks recovery of the damages proximately caused by SISCO's negligent performance of its undertaking in an amount to be determined by the trier of fact.

**COUNT II**

**NEGLIGENT MISREPRESENTATION**

112. Plaintiff incorporates paragraphs 1 through 111 as though fully set forth herein.

113. In the course of its business and in connection with a transaction in which it had an interest, SISCO, through Virtual Underwriter and Stewart Connect—systems SISCO owned, operated, and controlled—supplied transaction-specific underwriting and approval information for the guidance of participants in Plaintiff's transaction.

114. The Virtual Underwriter over-limits process communicated that underwriting approval was required before the transaction could proceed through the applicable underwriting process.

115. The subsequent transaction-specific Stewart Connect approval communicated that the required underwriting approval **had been obtained**.

116. The approval identified the specific property, proposed insured, and $1,100,000 requested and approved policy amount.

117. It expressly incorporated Stewart's Underwriting Guidelines, including Virtual Underwriter.

118. It expressly required:

**"Confirm the LLC buyer is in good standing in its state of incorporation."**

119. The approval therefore communicated a material then-existing fact concerning the transaction: **the transaction had obtained the required underwriting approval permitting it to proceed through the applicable underwriting process subject to the identified requirements and conditions.**

120. Plaintiff alleges that this communicated approval status was materially false or misleading.

121. Specifically, the transaction was represented through the approval process as having obtained the underwriting approval necessary to proceed even though an expressly identified condition material to that approval—the required confirmation of Catalyst REI, LLC's good standing—had allegedly not been satisfied.

122. Plaintiff does not predicate this claim merely upon a promise that SISCO or another Stewart entity would perform some act in the future.

123. The alleged misrepresentation concerned the transaction's **then-existing underwriting and approval status** before closing.

124. SISCO failed to exercise reasonable care or competence in obtaining, processing, validating, and communicating the transaction-specific information upon which that approval status was based.

125. Plaintiff actually received and understood the substance of the underwriting approval before closing.

126. Plaintiff knew that the purchaser's entity information had been submitted for underwriting review.

127. Plaintiff knew that underwriting approval was required before the transaction could proceed through the applicable underwriting process.

128. Plaintiff understood from the resulting approval that the required underwriting review had occurred and that the transaction had obtained the approval necessary to proceed.

129. Plaintiff understood that the underwriting process included the expressly identified requirement concerning Catalyst REI, LLC's good standing.

130. **Plaintiff actually and justifiably relied upon the approval.**

131. Because Plaintiff understood that the required underwriting approval had been obtained and that the transaction had been approved to proceed through the applicable underwriting process, Plaintiff **allowed the closing to proceed**.

132. Had Plaintiff known that the expressly required entity-validation condition had not been satisfied, Plaintiff would not have permitted the closing to proceed.

133. Plaintiff's reliance therefore was not based merely upon SISCO's SEC filings, corporate branding, status as a parent corporation, or the appearance of a corporate designation on an insurance policy.

134. Plaintiff's reliance arose from the **transaction-specific underwriting and approval process actually applied to Plaintiff's transaction through Virtual Underwriter and Stewart Connect.**

135. As a direct and proximate result of allowing the transaction to proceed in reliance upon the allegedly false or misleading approval status, Plaintiff suffered pecuniary loss.

136. Plaintiff therefore seeks recovery of the pecuniary loss proximately caused by her justifiable reliance in an amount to be established through discovery and at trial.

## XI. DAMAGES

137. As a direct and proximate result of SISCO's conduct alleged above, Plaintiff suffered actual and pecuniary damages.

138. Plaintiff seeks recovery of all actual and pecuniary damages recoverable under applicable law and proved at trial.

139. Plaintiff further seeks pre-judgment and post-judgment interest as permitted by law, taxable costs, and all other relief to which she establishes entitlement.

## XII. JURY DEMAND

140. Plaintiff demands a trial by jury on all issues so triable.

## XIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Paula Fisher respectfully requests that Defendant Stewart Information Services Corporation be required to answer this First Amended Complaint; that judgment be entered in Plaintiff's favor for all actual and pecuniary damages recoverable under applicable law and established by the evidence; that Plaintiff recover pre-judgment and post-judgment interest and taxable costs as permitted by law; and that the Court award such other and further relief to which Plaintiff establishes entitlement.

Respectfully submitted,

**Paula Fisher**

Plaintiff, Pro Se

8805 Tamiami Trail N. #260

Naples, Florida 34108

(239) 989-8801

paula10000@yahoo.com

# CERTIFICATE OF SERVICE

I certify that on September 25, 2026, a true and correct copy of the foregoing Plaintiff's First Amended Complaint was served upon counsel for Defendant Stewart Information Services Corporation in accordance with the Federal Rules of Civil Procedure and the Court's procedures.

**Paula Fisher**

Plaintiff, Pro Se

ORIGIN ID:FMYA (239) 989-8801
PAULA FISHER

8805 TAMIAMI TRL N
260
NAPLES, FL 34108
UNITED STATES US

SHIP DATE: 24SEP26
ACTWGT: 1.00 LB
CAD: 267700210/INET4535

BILL SENDER

TO US DISTRICT COURT
CLERKS OFFICE
515 RUSK AVENUE ROOM 5300

HOUSTON TX 77002
(760) 473-1645 REF:
INV:
PO: DEPT:

58KJ5/0168/4B4B

FedEx Express

E

Scan to learn how we can help make Earth a priority together.

FRI - 25 SEP 5:00P
STANDARD OVERNIGHT

TRK# 0201 8777 1117 2230

77002
XA EIXA TX-US IAH

4781 FRI 09/25/ 07:22
515 RUSK ST
77002-2607-25
HOUSTON TX
458-1067
ETP 1 SP PD 92Y

Insert shipping document here.

02/06/2026 19:53