**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| PAULA FISHER,<br><br>Plaintiff,<br><br>v.<br><br>STEWART INFORMATION SERVICES CORPORATION,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 4:26-cv-03267 |

**DEFENDANT STEWART INFORMATION SERVICES CORPORATION'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT UNDER RULE 12(b)(6)**

## TABLE OF CONTENTS


I. NATURE AND STAGE OF PROCEEDINGS .......... 1

II. STATEMENT OF ISSUES .......... 1

IV. FACTUAL BACKGROUND .......... 2

A. The Parties and Plaintiff's Theory of Direct Liability .......... 2

B. The Transaction and the Conditional Approval .......... 3

C. Plaintiff's Allegations of Knowledge, Reliance, and Loss .......... 4

III. SUMMARY OF THE ARGUMENT .......... 4

V. LEGAL STANDARD .......... 6

VI. ARGUMENT AND AUTHORITIES .......... 7

A. The FAC Does Not Plausibly Allege That SISCO Itself Engaged in Any Conduct in Plaintiff's Transaction. .......... 7

1. A parent is directly liable only for its own affirmative conduct, not for activity consistent with ownership. .......... 8

2. The FAC's "owned, operated, and controlled" allegation is a conclusion, and the facts Plaintiff offers to support it do not point to SISCO. .......... 9

3. Alleged ownership of the software used in the transaction does not plausibly allege that SISCO performed the underwriting. .......... 11

B. Count I Independently Fails Because Plaintiff Alleges No Physical Harm, the Economic-Loss Rule Bars Recovery, and the FAC Identifies No Undertaking for Her Protection. .......... 12

1. A negligent-undertaking claim requires physical harm, and Plaintiff alleges only pecuniary loss. .......... 13

2. The economic-loss rule independently bars recovery of Plaintiff's purely economic losses. .......... 14

3. The FAC identifies no service that SISCO undertook to perform for Plaintiff's protection. .......... 14

C. Count II Independently Fails Because the Conditional Approval Was Not a False Statement of Existing Fact and Was Not Supplied for Plaintiff's Guidance..16

1. An approval expressly made subject to an unmet condition does not represent that the condition has been met. ....17

2. The FAC does not plead that the approval was supplied for Plaintiff's guidance. ....18

D. The FAC Also Fails to Plead Facts Connecting Any Act of SISCO to an Identified Loss. ....19

E. Dismissal Should Be With Prejudice. ....20

VII. CONCLUSION ....21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*" Kasprzak v. Am. Gen. Life & Accident Ins. C*o.,
914 F. Supp. 144 (E.D. Tex. 1996) ....9, 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....6, 10, 11, 19

*Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*,
976 F.3d 585 (5th Cir. 2020) ....7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....6, 10, 15, 19

*Benchmark Elecs., Inc. v. J.M. Huber Corp.*,
343 F.3d 719 (5th Cir. 2003) ....16

*Blessett v. Garcia*,
816 F. App'x 945 (5th Cir. 2020) (per curiam) ....21

*Brewster v. Dretke*,
587 F.3d 764 (5th Cir. 2009) ....20, 21

*Chi. Title Ins. Co. v. McDaniel*,
875 S.W.2d 310 (Tex. 1994) (per curiam) ....15

*Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc.*,
88 F.3d 347 (5th Cir. 1996) ..... 17

*Collins v. Morgan Stanley Dean Witter*,
224 F.3d 496 (5th Cir. 2000) ..... 3, 7

*Daughtry v. Silver Fern Chem., Inc.*,
138 F.4th 210 (5th Cir. 2025) ..... 5, 13, 19, 20

*Davis v. Warren*,
173 F.4th 566 (5th Cir. 2026) ..... 20

*In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prods. Liab. Litig.*,
888 F.3d 753 (5th Cir. 2018) ..... 8, 9

*Erickson v. Pardus*,
551 U.S. 89 (2007) (per curiam) ..... 6

*Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*,
51 S.W.3d 573 (Tex. 2001) ..... 18

*Fed. Land Bank Ass'n of Tyler v. Sloane*,
825 S.W.2d 439 (Tex. 1991) ..... 16, 17

*In re First Rsrv. Mgmt., L.P.*,
671 S.W.3d 653 (Tex. 2023) ..... *passim*

*Fisher v. Stewart Title Guar. Co.*,
No. 1:25-cv-01001-VMC, slip op. (N.D. Ga. Sept. 24, 2026), ECF No. 148 ..... 7, 11, 20

*Fort Bend Cnty. Drainage Dist. v. Sbrusch*,
818 S.W.2d 392 (Tex. 1991) ..... 14

*Gardemal v. Westin Hotel Co.*,
186 F.3d 588 (5th Cir. 1999) ..... 12

*Gutierrez v. Collins*,
583 S.W.2d 312 (Tex. 1979) ..... 7

*Jones v. Greninger*,
188 F.3d 322 (5th Cir. 1999) (per curiam) ..... 20

*King v. Dogan*,
31 F.3d 344 (5th Cir. 1994) ..... 3

*LAN/STV v. Martin K. Eby Constr. Co.*,
435 S.W.3d 234 (Tex. 2014) ..... 14, 20

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
594 F.3d 383 (5th Cir. 2010) ....................................................................3, 7

*Lovelace v. Software Spectrum Inc.*,
78 F.3d 1015 (5th Cir. 1996) ........................................................................7

*Lucas v. Tex. Indus., Inc.*,
696 S.W.2d 372 (Tex. 1984)...........................................................................8

*McCamish, Martin, Brown & Loeffler v. F.E. Appling Ints.*,
991 S.W.2d 787 (Tex. 1999)...........................................................................18

*Nall v. Plunkett*,
404 S.W.3d 552 (Tex. 2013) (per curiam)...................................................12, 16

*Randall D. Wolcott, M.D., P.A. v. Sebelius*,
635 F.3d 757 (5th Cir. 2011) .........................................................................6

*Risinger Holdings, LLC v. Sentinel Ins. Co.*,
565 F. Supp. 3d 844 (E.D. Tex. 2021)...........................................................10

*Serv. Corp. Int'l v. Guerra*,
348 S.W.3d 221 (Tex. 2011)...........................................................................10

*Sharyland Water Supply Corp. v. City of Alton*,
354 S.W.3d 407 (Tex. 2011)...........................................................................14

*Torrington Co. v. Stutzman*,
46 S.W.3d 829 (Tex. 2000)........................................................................12, 15

*Waller v. Hanlon*,
922 F.3d 590 (5th Cir. 2019) ......................................................................6, 18

**Other Authorities**

Federal Rule of Civil Procedure Rule 8 ..............................................6, 16, 19

Federal Rule of Civil Procedure Rule 9(b)........................................................16

Federal Rule of Civil Procedure 12(b)(6).........................................................1, 6, 13

Restatement (Second) of Conflict of Laws (Am. L. Inst. 1971) ...............................7

Restatement (Second) of Torts § 323 (Am. L. Inst. 1965)......................................13

Restatement (Second) of Torts § 552 (Am. L. Inst. 1977)..................................16, 18

Tex. R. Civ. P. 91a.............................................................................................8

Defendant Stewart Information Services Corporation ("SISCO") moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff Paula Fisher's First Amended Complaint (ECF No. 19) ("FAC") with prejudice. In support, SISCO respectfully shows the following.

## I. NATURE AND STAGE OF PROCEEDINGS

Plaintiff Paula Fisher, proceeding pro se, sold real property in Alpharetta, Georgia, to Catalyst REI, LLC, and alleges that the closing went forward although a condition requiring confirmation of the buyer's good standing had not been satisfied. FAC ¶¶ 36–37, 70–71. She seeks to hold SISCO, the publicly traded parent of the Stewart Title operating companies, liable for negligent undertaking (Count I) and negligent misrepresentation (Count II).

This is her second attempt. After SISCO requested a pre-motion conference identifying the deficiencies in her original complaint, ECF No. 7, the Court granted Plaintiff leave to amend, ordered her to file an amended complaint "that addresses all of the deficiencies identified in" SISCO's request, cautioned that "[f]urther leave to amend to address deficiencies already identified will be denied," and stayed discovery pending a ruling on any motion to dismiss. ECF No. 18. Plaintiff filed the FAC on September 25, 2026. ECF No. 19. It reasserts the same two claims which do not cure the defects and dismissal with prejudice is merited.

## II. STATEMENT OF ISSUES

**1.** Whether the FAC pleads facts plausibly showing that SISCO itself, rather than its subsidiary Stewart Title Guaranty Company, a title insurance company or the closing agent, engaged in the conduct on which both counts depend.

**2.** Whether Count I states a negligent-undertaking claim under Texas law when Plaintiff alleges only pecuniary loss and identifies no service SISCO undertook to perform for her protection.

**3.** Whether Count II states a negligent-misrepresentation claim when the alleged representation was addressed to the closing agent, which on its face communicated that a condition remained to be satisfied.

**4.** Whether dismissal should be with prejudice.

## IV. FACTUAL BACKGROUND

### A. The Parties and Plaintiff's Theory of Direct Liability

SISCO is a publicly traded Delaware corporation headquartered in Houston and "the parent company of affiliated Stewart entities." FAC ¶¶ 13–14. Plaintiff alleges that "Stewart issued the $1,100,000 owner's title insurance policy associated with the transaction," but disclaims any contention that SISCO is liable "merely because Stewart issued that policy." *Id.* ¶¶ 15–16. She likewise disclaims any effort to "disregard corporate separateness, pierce the corporate veil, or impose upon SISCO a subsidiary's contractual obligations." *Id.* ¶ 3; *see id.* ¶¶ 85–87.

Plaintiff's theory instead rests on two automated systems, Virtual Underwriter® and Stewart Connect. She alleges that SISCO "owns, operates, and controls" those systems, *id.* ¶ 32; *see also id.* ¶¶ 5, 17, 76, and that they "were actually used in Plaintiff's particular transaction," *id.* ¶¶ 34, 77. The factual source she identifies for SISCO's connection to the systems is SISCO's 2025 Form 10-K. *Id.* ¶¶ 23–31. As the FAC acknowledges, Form 10-K states that, unless the context indicates otherwise, "we," "us," "our," the "Company," and "Stewart" mean "Stewart Information Services

Corporation and its subsidiaries." *Id.* ¶ 24. The FAC quotes the filing's statements that "[w]e have developed and acquired numerous automated products and processes that are crucial to both our title and real estate solutions operations" and that "[t]hese systems automate most facets of the real estate transaction." *Id.* ¶¶ 27–28.

**B. The Transaction and the Conditional Approval**

The transaction concerned real property at 305 Eagles Pass, Alpharetta, Georgia; the proposed purchaser and insured was Catalyst REI, LLC; and the requested owner's policy amount was $1,100,000. *Id.* ¶¶ 36–38. Because of the amount, the transaction was subject to an "over-limits" underwriting process that "required underwriting approval before the transaction could proceed." *Id.* ¶¶ 43–47. A "transaction-specific Stewart Connect approval" then issued. *Id.* ¶ 49. Plaintiff alleges that the approval "expressly incorporated Stewart's Underwriting Guidelines" and "expressly required: 'Confirm the LLC buyer is in good standing in its state of incorporation.'" *Id.* ¶¶ 54–55. In her words, the approval communicated that "the transaction was approved to proceed through the applicable underwriting process *subject to the stated requirements and conditions*." *Id.* ¶ 59 (emphasis added); *see id.* ¶¶ 65, 119.

The approval itself was attached to Plaintiff's original complaint, ECF No. 1-2 at 14–16, and SISCO attaches it to this motion as Exhibit A.[1] It is addressed to "Kristy

[1] An amended complaint supersedes the original and renders it of no legal effect unless it specifically refers to and adopts or incorporates the earlier pleading. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). SISCO therefore does not rely on any allegation of the original complaint. But documents attached to a motion to dismiss "are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witte*r, 224 F.3d 496, 498–99 (5th Cir. 2000) (citation omitted); *see also Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The FAC quotes the approval, FAC ¶¶ 55, 118, describes its contents at length, *id*. ¶¶ 49–59, 113–21, and both counts rely on this.

Altamira, The Gurvey Law Group," the issuing agent, and approves "*your* issuance" of the referenced policy, subject to listed "CONDITIONS TO APPROVAL," the first of which reads: "Confirm the LLC buyer is in good standing in its state of incorporation." Ex. A.

### C. Plaintiff's Allegations of Knowledge, Reliance, and Loss

Plaintiff alleges that before closing she "knew" the buyer's entity information had been submitted for underwriting review, "understood" that the transaction had obtained the required approval, and "actually received and understood the substance of the underwriting approval." FAC ¶¶ 60–65, 125–28. She alleges that she "understood that the underwriting process included the expressly identified requirement concerning Catalyst REI, LLC's good standing." *Id.* ¶ 129; *see id.* ¶ 66.

Plaintiff alleges that the good-standing condition "was not satisfied before the transaction proceeded," that the transaction "proceeded to closing" anyway, and that she would not have allowed the closing had she known the condition was unmet. *Id.* ¶¶ 69–71. She seeks unspecified "actual and pecuniary damages." *Id.* ¶¶ 111, 135–38.

## III. SUMMARY OF THE ARGUMENT

The FAC seeks to hold a parent holding company liable without alleging any specific act the parent itself undertook. Plaintiff disclaims any veil-piercing theory and says she seeks to hold SISCO liable for its "own" conduct. FAC ¶¶ 2–4, 85–87. But the only conduct described is the issuance of a transaction-specific underwriting approval to the closing agent and the issuance of an owner's policy to the buyer, not to Plaintiff. The FAC attributes that conduct to SISCO in only one way: it alleges, without supporting facts, that SISCO "owns, operates, and controls" the software through which

the approval was transmitted. FAC ¶ 32; *see id.* ¶ 76. That allegation is a conclusory assumption. The only factual source Plaintiff relies upon, SISCO's Form 10-K, defines "Stewart" to mean SISCO "and its subsidiaries" collectively, FAC ¶ 24. This allegation does not distinguish SISCO from the operating subsidiary, Stewart Title Guaranty Company, which underwrites title insurance policies. Texas law does not permit an undertaking duty to be inferred from a parent's ownership of, or general authority over, the tools its subsidiaries use. *In re First Rsrv. Mgmt., L.P.*, 671 S.W.3d 653, 661 (Tex. 2023).

Each count also fails for reasons independent of that threshold defect. Count I fails as a matter of law because a negligent-undertaking claim under Texas law requires physical harm, and Plaintiff alleges only "pecuniary" loss. *Daughtry v. Silver Fern Chem., Inc.*, 138 F.4th 210, 219 (5th Cir. 2025). The Texas economic-loss rule independently bars recovery of purely economic damages. Count I also fails because the FAC identifies no service performed for Plaintiff's protection; it complains instead that a condition was not satisfied, which is a theory of omission that cannot support undertaking liability.

Count II fails because the approval on which Plaintiff relies was not a false statement of existing fact. By its terms, the issuance of a title insurance policy was "subject to" listed conditions, the first of which directed the agent to "[c]onfirm the LLC buyer is in good standing." A statement that a confirmation remains to be completed, is not a representation that confirmation has occurred. Nor does the FAC plead that the approval, which was addressed to the closing agent, was supplied for Plaintiff's

guidance. These pleading deficiencies show that further amendment of either count would be futile.

## V. LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Fifth Circuit applies that standard in two steps. The court first identifies the complaint's well-pleaded factual content and sets aside "any unsupported legal conclusions," whose truth it cannot assume; it then asks whether the remaining facts permit a reasonable inference of "more than the mere possibility of misconduct." *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019) (first quoting *Doe v. Robertson*, 751 F.3d 383, 388 (5th Cir. 2014); then quoting *Iqbal*, 556 U.S. at 679).

"[L]abels and conclusions" and "a formulaic recitation of the elements" do not suffice, *Twombly*, 550 U.S. at 555, and facts that are "merely consistent with" liability stop "short of the line between possibility and plausibility," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Rule 8 thus "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79. Pro se pleadings are construed liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), but must still plead facts that make the claim plausible.

The Court may consider the complaint, its proper attachments, documents incorporated by reference, and matters subject to judicial notice. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011). Documents attached to a motion to dismiss are part of the pleadings if they are referred to in the complaint and

central to the plaintiff's claims. *Collins*, 224 F.3d at 498–99; *Lone Star Fund V*, 594 F.3d at 387. When a plaintiff relies on isolated portions of such a document, the Court reads the document as a whole. *Lone Star Fund V*, 594 F.3d at 388–89. The Court may also take judicial notice of SEC filings for the fact of what they say, though not for the truth of their contents. *Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*, 976 F.3d 585, 589 (5th Cir. 2020); *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996).[2]

## VI. ARGUMENT AND AUTHORITIES

### A. The FAC Does Not Plausibly Allege That SISCO Itself Engaged in Any Conduct in Plaintiff's Transaction.

Both counts depend on a single premise: that SISCO, the parent holding company, performed some specific act in Plaintiff's real estate transaction. Because Plaintiff has expressly abandoned any veil-piercing or alter-ego theory, FAC ¶¶ 3, 85–87, she must plead facts showing SISCO's own conduct. The FAC does not do so. This defieciency is common to both counts and requires dismissal of each count.

[2]The FAC does not identify the governing law. Texas choice-of-law rules apply the Restatement (Second) of Conflict of Laws (Am. L. Inst. 1971) "most significant relationship" test to tort claims. *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979). Because the property and closing were in Georgia, Georgia law may ultimately govern. The Court need not resolve that question now, however, because Plaintiff has not identified any conflict between state laws, her claims are framed in the terms Texas law uses, and SISCO's motion is based on Texas law. Applying Georgia law to the same transaction, the Northern District of Georgia dismissed Plaintiff's claims against the underwriter of the policy, holding that a title insurer's "duty . . . is only to its insured and not to one who is not a party to the contract," and that issuance of the policy cannot be treated as an implied representation to the non-insured seller. *Fisher v. Stewart Title Guar. Co.*, No. 1:25-cv-01001-VMC, slip op. at 5-6 (N.D. Ga. Sept. 24, 2026), ECF No. 148 (quoting *Gaines v. Am. Title Ins. Co.*, 220 S.E.2d 469, 471 (Ga. Ct. App. 1975)). The result is therefore the same under Georgia law. SISCO reserves its right to seek application of Georgia law.

### 1. A parent is directly liable only for its own affirmative conduct, not for activity consistent with ownership.

Texas law treats a parent and its subsidiary as distinct legal entities. "Creation of affiliated corporations to limit liability while pursuing common goals lies firmly within the law and is commonplace," and "[a]s long as companies are distinct legal entities, they are not liable for each other's conduct unless some exception applies." *First Reserve*, 671 S.W.3d at 660 (internal quotation marks omitted). More than "mere unity of financial interest, ownership, and control" is required to hold a parent responsible for a subsidiary's acts. *Lucas v. Tex. Indus., Inc.*, 696 S.W.2d 372, 374 (Tex. 1984).

A plaintiff may avoid those rules by alleging that the parent itself committed a tort, but the allegation must be grounded in the parent's own affirmative acts. In *First Reserve*, the Texas Supreme Court concluded that a petition failed to plead a negligent-undertaking claim against an investor that allegedly exercised "operational control" over a plant, because the plaintiffs had "not pleaded a single instance" in which the investor itself made the relevant decision. 671 S.W.3d at 662 (applying Tex. R. Civ. P. 91a, but denying mandamus relief because of a bankruptcy stay). The court explained that liability "cannot be based on [the investor's] ownership interest . . . or any other action that is consistent with its investor status," and that the plaintiffs therefore needed to plead "facts showing" that the investor "undertook in other ways" to perform the specific function at issue. *Id.* at 661. The Fifth Circuit applies the same principle: a parent's "authority to compel" its subsidiary is not enough; the parent "must actually" exercise that authority "in a manner relevant to the undertaking inquiry." *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prods. Liab. Litig.*, 888 F.3d 753, 783 (5th Cir. 2018).

Although *DePuy* reviewed a jury verdict, it illustrates the kind of facts required. The court sustained the verdict against Johnson & Johnson only because the evidence showed that it had itself reviewed and approved its subsidiary's marketing materials, promoted the product under its own name, and exercised veto authority in specific instances. *See id.* at 779–80, 783. If a parent's own conduct must be proved at trial, it must at least be alleged at the pleading stage. The FAC alleges no specific acts taken by SISCO.[3]

### 2. The FAC's "owned, operated, and controlled" allegation is a conclusion, and the facts Plaintiff offers to support it do not point to SISCO.

The FAC alleges multiple times that SISCO "owned, operated, and controlled" (or "owns, operates, and controls") Virtual Underwriter and Stewart Connect. FAC ¶¶ 5, 17, 32, 76, 99, 113. Repetition does not convert a conclusion into a fact. The FAC never alleges what SISCO did to operate or control either system, which SISCO employee or department did so, or how SISCO participated in this transaction. Put simply, the FAC does not allege that SISCO undertook any specific act: the underwriting decision, issued the conditional approval, or took steps to confirm the buyer's good standing. This is the same omission present in *First Reserve*: an assertion of "control" without "a single instance" of the defendant's own decision-making. 671 S.W.3d at 662.

[3] To the extent Plaintiff contends that SISCO and its title-insurance subsidiary share a chief executive officer, *see* ECF No. 15, the FAC does not plead that fact, and it would not change the analysis if it did. "[I]t is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts." *First Reserve*, 671 S.W.3d at 660–61 (quoting *United States v. Bestfoods*, 524 U.S. 51, 69 (1998)). Likewise, "[m]erely showing a blending of activities between the parent and subsidiary, such that they may have had some or all of the same directors or officers, . . . is not alone sufficient to make the parent liable." *Kasprzak v. Am. Gen. Life & Accident Ins. Co.*, 914 F. Supp. 144, 147 (E.D. Tex. 1996).

The only facts upon which Plaintiff relies, the Form 10-K, does not cure the omission. As the FAC itself pleads, the filing uses "we," "our," and "Stewart" to refer to SISCO "and its subsidiaries" collectively. FAC ¶ 24. A statement that the consolidated enterprise "ha[s] developed and acquired" automated systems, *id.* ¶ 27, does not identify which entity within the enterprise operates each system or performed any function in a particular closing. At most, the allegation is "merely consistent with" SISCO's involvement, which does not suffice. *Iqbal*, 556 U.S. at 678; *see Twombly*, 550 U.S. at 557 (requiring allegations "plausibly suggesting (not merely consistent with)" the claim).

The Texas Supreme Court has applied similar reasoning to corporate-family relationships, holding that a parent's logo on a subsidiary employee's paperwork did not support a finding that the parent employed him because it was equally consistent with employment by the subsidiary. *See Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 230 (Tex. 2011). Courts likewise have dismissed insurance-related claims against a parent holding company which did not itself issue, underwrite, or administer the policy. *Cf. Risinger Holdings, LLC v. Sentinel Ins. Co.*, 565 F. Supp. 3d 844, 850–52, 855–56 (E.D. Tex. 2021) (dismissing claims against insurer's parent holding company for lack of standing and, alternatively, for failure to state a claim, relying in part on the parent's sworn declaration and Form 10-K statement that it was a holding company with no significant operations of its own); *Kasprzak*, 914 F. Supp. at 147 (denying remand on fraudulent-joinder grounds; "the use of a corporate designation on a policy is insufficient as a matter of law to establish the liability of the parent"). Notably, Plaintiff sued the operating entity, Stewart Title Guaranty Company, the title insurer, and those

claims failed when subject to a motion to dismiss. *Fisher v. Stewart Title Guar. Co.*, No. 1:25-cv-01001-VMC, slip op. at 5-6 (N.D. Ga. Sept. 24, 2026), ECF No. 148. This prior case further demonstrates the deficiencies of Plaintiff's claims.

The FAC's description of the transaction reinforces this fatal flaw. Plaintiff alleges that "Stewart" issued the policy, FAC ¶ 15, and that the approval incorporated "Stewart's Underwriting Guidelines," *id.* ¶ 54, using the same collective term the 10-K defines to include the subsidiaries. The approval Plaintiff quotes is addressed to the issuing agent, and the FAC does not allege that the individual who approved it acted for SISCO. *See* Ex. A. Plaintiff's disclaimer of reliance on "branding," FAC ¶¶ 35, 87, does not help, because once the collective references to "Stewart" are set aside, no specific factual allegation about what specific acts SISCO undertook remains.

**3. Alleged ownership of the software used in the transaction does not plausibly allege that SISCO performed the underwriting.**

Even accepting that SISCO owns the software, the FAC does not state a claim against SISCO. When the facts alleged are consistent with liability but an "obvious alternative explanation" accounts for them, the allegations "do not plausibly establish" the claim. *Iqbal*, 556 U.S. at 681–82 (quoting *Twombly*, 550 U.S. at 567).

The FAC alleges that the conditional approval was "communicated through" the systems, FAC ¶ 5, and "issued" through them, *id.* ¶ 95, but it does not allege that SISCO made the underwriting decision, was responsible for, or took any action to satisfy its conditions. The obvious alternative explanation is that the systems were tools used by the operating entity that underwrite title insurance or perform the closing of real estate transactions. The conditional approval Plaintiff quotes is consistent with this explanation: the issuing agent was authorized to issue the policy "based on information

provided by" that agent. Ex. A. Nor does supplying a platform, setting enterprise-wide guidelines, or maintaining shared infrastructure amount to a parent's own undertaking. Those activities are "consistent with" a parent's investor status and cannot support direct liability. *First Reserve*, 671 S.W.3d at 661; *see also Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 594–95 (5th Cir. 1999) (on summary judgment, holding that subsidiary's use of parent's trademark, operations manuals, and reservation system reflected a typical parent-subsidiary relationship and did not support parent liability). Both counts rely on conduct the FAC does not attribute to SISCO, and should be dismissed.

### B. Count I Independently Fails Because Plaintiff Alleges No Physical Harm, the Economic-Loss Rule Bars Recovery, and the FAC Identifies No Undertaking for Her Protection.

Texas recognizes that one who undertakes "to render services to another which he should recognize as necessary for the protection of the other's person or things" must exercise reasonable care in performing the undertaking. *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 838 (Tex. 2000) (quoting Restatement (Second) of Torts § 323 (Am. L. Inst. 1965)). To plead the claim, a plaintiff must allege that (1) the defendant undertook to perform services that it knew or should have known were necessary for the plaintiff's protection; (2) the defendant failed to exercise reasonable care in performing those services; and either (3) the plaintiff relied on the defendant's performance or (4) the defendant's performance increased the plaintiff's risk of harm. *Nall v. Plunkett*, 404 S.W.3d 552, 555–56 (Tex. 2013) (per curiam). Count I fails on three independent grounds.

**1. A negligent-undertaking claim requires physical harm, and Plaintiff alleges only pecuniary loss.**

The Fifth Circuit has held that a negligent-undertaking claim under Restatement (Second) of Torts § 323 or § 324A, as applied in Texas, "requires 'physical harm.'" *Daughtry*, 138 F.4th at 219 (citing *King v. Graham Holding Co.*, 762 S.W.2d 296, 300 (Tex. App.—Houston [14th Dist.] 1988, no writ) ("by its own terms, applies only to physical harm")). That limitation appears in the text of the Restatement itself: one who undertakes to render services "is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking." Restatement (Second) of Torts § 323 (Am. L. Inst. 1965); *see also id.* § 324A (liability "to the third person for physical harm").

In *Daughtry*, the plaintiffs alleged that their businesses were closed and their income eliminated; the court held that "[n]one of that is 'physical harm'" and affirmed dismissal under Rule 12(b)(6). 138 F.4th at 219. The court also noted that the plaintiffs had not pleaded that the defendant "took on a responsibility not to cause financial harm that would justify imposing malpractice or a similar type of liability." *Id.* (citing *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 418–19 (Tex. 2011)).

*Daughtry* is directly on point. Count I seeks "damages proximately caused by SISCO's negligent performance of its undertaking," FAC ¶ 111, and the FAC describes those damages only as "actual and pecuniary damages," *id.* ¶¶ 137–38. Plaintiff does not allege injury to her person or to her property, and she pleads no facts suggesting that SISCO assumed a professional responsibility to protect her from financial loss. To the contrary, she alleges that SISCO's only connection to the transaction was its ownership

of software used by others. *Id.* ¶¶ 32–34, 76–77. Because the claim seeks recovery for purely economic loss, it fails as a matter of law. No amendment could cure that defect.

**2. The economic-loss rule independently bars recovery of Plaintiff's purely economic losses.**

The Texas economic-loss rule provides an independent basis for dismissing Count I. "In actions for unintentional torts, the common law has long restricted recovery of purely economic damages unaccompanied by injury to the plaintiff or his property." *LAN/STV v. Martin K. Eby Constr. Co.*, 435 S.W.3d 234, 235 (Tex. 2014). Texas courts of appeals have "uniformly applied the economic loss rule to deny recovery of purely economic losses in actions for negligent performance of services," *id.* at 243, and in *LAN/STV* the Texas Supreme Court applied the rule to bar a contractor's tort claim against a project architect with whom it "had no agreement," *id.* at 249. While this rule does not bar every claim between contractual strangers, *Sharyland*, 354 S.W.3d at 418–19, the FAC alleges no injury to Plaintiff's person or property nor that SISCO assumed responsibility to protect her from financial loss. Count I therefore fails on this ground as well.

**3. The FAC identifies no service that SISCO undertook to perform for Plaintiff's protection.**

The "critical inquiry concerning the duty element" of an undertaking claim "is whether a defendant acted in a way that requires the imposition of a duty where one otherwise would not exist." *First Reserve*, 671 S.W.3d at 660 (quoting *Nall*, 404 S.W.3d at 555). The duty arises only from "an affirmative course of action"; it "cannot be predicated on an omission," or on a promise "not accompanied by either performance or reliance on the promise by the injured party." *Id.*; *see Fort Bend Cnty. Drainage Dist.*

*v. Sbrusch*, 818 S.W.2d 392, 396 (Tex. 1991) ("A mere promise to render a service coupled with neither performance nor reliance imposes no tort obligation upon the promisor."). And the duty "is limited to that undertaking." *Torrington*, 46 S.W.3d at 839 (quoting *Sbrusch*, 818 S.W.2d at 397).

Count I describes SISCO's undertaking only in general terms: SISCO "undertook to own, operate, control, and provide enterprise automated systems," FAC ¶ 90, and "thereby undertook to perform functions necessary for the protection of participants affected by that underwriting process," *id.* ¶ 100. FAC ¶ 90 allegation describes ownership of software, not a service rendered to anyone. FAC ¶ 100 is a legal conclusion that does not identifying any service, any protective purpose, or any act directed by SISCO at Plaintiff. *See Twombly*, 550 U.S. at 555.

The FAC does not allege that SISCO, or anyone, undertook to verify the buyer's existence for the seller's benefit. The conditional approval Plaintiff quotes was an underwriter's authorization to an issuing agent to issue a policy insuring the buyer, and it was expressly "based on information provided by" that agent. Ex. A. An underwriter's evaluation of whether it will insure a risk is undertaken for itself and its insured, not for the seller on the other side of the closing. *See Chi. Title Ins. Co. v. McDaniel*, 875 S.W.2d 310, 311 (Tex. 1994) (per curiam) (title policy is a contract of indemnity, not a representation regarding title).

The breach Plaintiff alleges confirms that her claim rests on a failure to act. She contends that SISCO was negligent because "the transaction was permitted to proceed . . . notwithstanding the alleged failure to satisfy" the good-standing condition. FAC ¶ 102; *see id.* ¶ 103. That is a complaint that someone failed to confirm the buyer's status

or failed to stop the closing. Under *First Reserve*, an undertaking duty "cannot be predicated on an omission." 671 S.W.3d at 660.

Plaintiff's alternative reliance theory, FAC ¶¶ 104–09, does not change the analysis, as an allegation of reliance does not supply the missing undertaking. *See Nall*, 404 S.W.3d at 555–56. And what Plaintiff says she relied on was the conditional approval itself, which disclosed on its face that the condition remained to be satisfied.

**C. Count II Independently Fails Because the Conditional Approval Was Not a False Statement of Existing Fact and Was Not Supplied for Plaintiff's Guidance.**

Texas follows Restatement (Second) of Torts § 552 (Am. L. Inst. 1977). A negligent-misrepresentation plaintiff must allege that (1) the defendant made a representation in the course of its business or in a transaction in which it had a pecuniary interest; (2) the defendant supplied "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991). Count II fails to meet the second element in two respects, each of which is independently sufficient for dismissal.[4]

[4] Rule 9(b) does not apply to Count II because Plaintiff asserts no fraud claim and does not allege that the negligent misrepresentation rests on the same operative facts as a fraud claim. *See Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003) ("Rule 9(b) by its terms does not apply to negligent misrepresentation claims," though the court applies it where fraud and negligent-misrepresentation claims "are based on the same set of alleged facts"). SISCO's arguments rest on Rule 8 and Texas substantive law.

**1. An approval expressly made subject to an unmet condition does not represent that the condition has been met.**

The "false information" element requires a misstatement of existing fact, not a statement about what will or must happen in the future. *Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc.*, 88 F.3d 347, 357–58 (5th Cir. 1996). In *Clardy*, the Fifth Circuit held that a lender's statements about a forthcoming commitment letter were not actionable because the borrower did "not contend that [the lender] represented that the loan had in fact been approved." *Id. Sloane* marks the other side of the analysis: the lender's officer there told the borrowers that the loan *had been* approved when it had not. 825 S.W.2d at 441.

The approval here falls on the *Clardy* side of the analysis, and Plaintiff's own description of it establishes as much. She alleges that the approval communicated that the transaction could proceed "*subject to the stated requirements and conditions*," FAC ¶ 59, and that one of those conditions was the requirement to "[c]onfirm the LLC buyer is in good standing," *id.* ¶¶ 55, 66, 118–19. The full document is to the same effect. It approved the agent's issuance of the policy "subject to the terms that you have submitted to us," made the approval "contingent upon any conditions and/or requirements provided in . . . this email," and listed the good-standing confirmation as the first "CONDITION[] TO APPROVAL." Ex. A. A direction to confirm a fact communicates that the fact has not yet been confirmed. The approval therefore could not have represented that the buyer's good standing had been verified, which is the only representation which Plaintiff contends was false. FAC ¶¶ 11, 120–21.

Plaintiff attempts to recast the approval as a statement of "then-existing" fact: that "the transaction had obtained the required underwriting approval." *Id.* ¶¶ 74, 119,

123. Plaintiff does not allege that no approval issued; she alleges that one did, on stated conditions. *Id.* ¶¶ 49–59. What she actually challenges is the later failure to satisfy a condition before closing, *id.* ¶¶ 70–72, which is not a misstatement contained in the approval at all. Labeling a conditional approval a representation of present fact, FAC ¶ 122, is a legal conclusion the Court need not accept. *Waller*, 922 F.3d at 599. The result is the same whether the Court reads the full approval or only the portions the FAC quotes, because the FAC itself pleads that the approval was "subject to the stated requirements and conditions" and quotes the unmet condition verbatim. FAC ¶¶ 55, 59, 118. Because the pleading deficiency arises from the text of the document on which the claim is founded, it cannot be cured by repleading.

**2. The FAC does not plead that the approval was supplied for Plaintiff's guidance.**

Section 552 also limits liability to loss suffered by "the person or one of a limited group of persons for whose benefit and guidance" the defendant "intends to supply the information or knows that the recipient intends to supply it." *McCamish, Martin, Brown & Loeffler v. F.E. Appling Ints.*, 991 S.W.2d 787, 794 (Tex. 1999) (quoting Restatement (Second) of Torts § 552(2)). The Texas Supreme Court has described the claim as available only when information is transferred to "a known party for a known purpose." *Id.* Foreseeability that a third party might learn of the information is not enough. *See id.*; *cf. Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 578 (Tex. 2001) (misrepresentation to one person actionable by another only if intended to reach and induce reliance by that person).

The FAC pleads no facts satisfying this requirement. The approval was addressed to the issuing agent and authorized "your issuance" of a policy to the buyer,

based on "your representation" about compliance with underwriting guidelines. Ex. A. Plaintiff does not allege that SISCO engaged in any specific act, i.e., the approval was sent to her, that its author knew of her or intended that she rely on it, or that anyone at SISCO knew the agent would pass it to her. She alleges only that she "received and understood the substance" of the approval at some point before closing, FAC ¶ 125, without identifying who conveyed it, when, or how. The conclusory allegation that the information was supplied "for the guidance of participants" in the transaction, *id.* ¶ 113, recites an element of the claim without any supporting facts. *See Iqbal*, 556 U.S. at 678. The Fifth Circuit has applied the same principle to the analogous intent-to-induce-reliance element of fraud, affirming dismissal where the allegations showed at most that the defendant intended a third party, rather than the plaintiffs, to rely on the statements. *Cf. Daughtry*, 138 F.4th at 217–18.

### D. The FAC Also Fails to Plead Facts Connecting Any Act of SISCO to an Identified Loss.

Both counts require that SISCO's conduct proximately caused the plaintiff's loss. The FAC alleges causation and damages only in conclusory terms: SISCO's breach "was a proximate cause of Plaintiff's resulting injury and pecuniary loss," and Plaintiff "suffered actual and pecuniary damages." FAC ¶¶ 110, 135, 137. It does not identify the loss, its amount, or the chain of events which the unmet conditional approval caused. These are "formulaic recitation[s]" of elements that do not satisfy Rule 8. *Twombly*, 550 U.S. at 555.[5]

[5] SISCO acknowledges that this deficiency, standing alone, might be addressed by more specific pleading. It is an additional reason for dismissal, not the principal one, and SISCO's request for dismissal with prejudice does not rest on it.

**E. Dismissal Should Be With Prejudice.**

Leave to amend need not be granted when amendment would be futile or when the plaintiff has already pleaded her best case. *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009); *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999) (per curiam). The Fifth Circuit has cautioned that a pro se plaintiff ordinarily should receive an opportunity to amend, and that a single prior amendment does not always establish that she has pleaded her best case, particularly where it is unclear that she understood the deficiencies. *See Davis v. Warren*, 173 F.4th 566, 575–76 (5th Cir. 2026).

Here, further amendment would be futile because each of the three deficiencies identified above arise from controlling case law and from the text of the document on which Plaintiff's claims are founded.

First, Count I fails because a negligent-undertaking claim under Texas law requires physical harm, and Plaintiff seeks only pecuniary loss arising from the sale of real property. *Daughtry*, 138 F.4th at 219. Second, the economic-loss rule independently bars recovery of those purely economic damages. *LAN/STV*, 435 S.W.3d at 235. Third, Count II fails because the approval on which it rests was expressly conditional and, on its face, communicated that the buyer's good standing had not yet been confirmed. Ex. A; FAC ¶¶ 55, 59. No additional facts Plaintiff could plead would change any of these results.

Indeed, the same result has already been reached as to the entity that actually underwrote the policy. *See Fisher*, N.D.GA., No. 1:25-cv-01001-VMC, slip op. at 5–6. Even if Plaintiff could attribute any underwriting functions to SISCO, the conduct she challenges is not actionable by a non-insured seller. No amendment can change the text

of the conditional approval or convert the pecuniary loss from a real-estate sale into physical harm or injury to person or property.

SISCO's pre-motion letter identified the absence of any false representation made to Plaintiff on which she relied. ECF No. 7 at 2. The Court then granted Plaintiff leave to amend, ordered her to file an amended complaint "that addresses all of the deficiencies identified in" that letter, and cautioned that "[f]urther leave to amend to address deficiencies already identified will be denied." ECF No. 18 at 1. As to these three deficiencies, Plaintiff has pleaded her best case. *See Brewster*, 587 F.3d at 768; *cf. Blessett v. Garcia*, 816 F. App'x 945, 952–53 (5th Cir. 2020) (per curiam) (affirming dismissal with prejudice by a court in this District of pro se fraud claims where plaintiff failed to cure deficiencies despite numerous opportunities to amend).

The remaining grounds, including the failure to allege SISCO's own conduct, the failure to allege that the approval was supplied for Plaintiff's guidance, and the conclusory causation allegations, are pleading deficiencies. SISCO notes, however, that its pre-motion letter also identified the absence of facts showing SISCO's own conduct, ECF No. 7 at 1–2, which the Court's order addressed in the same terms, ECF No. 18 at 1. If the Court rests dismissal on any of those grounds alone and is inclined to permit a further amendment, SISCO requests that the Court identify the specific factual deficiencies any further amendment must address.

## VII. CONCLUSION

For these reasons, SISCO respectfully requests that the Court grant this motion and dismiss Plaintiff's First Amended Complaint in its entirety with prejudice.

Respectfully submitted,

By: *John A. Koepke*
John A. Koepke
State Bar No. 11653200
S.D. Tex. Bar No. 178051

JACKSON WALKER L.L.P.
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
(214) 953-6005
(214) 661-6660 (facsimile)
jkoepke@jw.com

Jennifer Bryant
State Bar No. 03276600
JACKSON WALKER L.L.P.
1401 McKinney St., Suite 1900
Houston, Texas 77010
(713) 752-4212
(713) 308-4105 (facsimile)
jbryant@jw.com

**ATTORNEY FOR DEFENDANT STEWART INFROMATION SERVICES CORPORATION**

## CERTIFICATE OF SERVICE

I hereby certify that on October 8, 2026, a true and correct copy of the foregoing was filed through the Court's CM/ECF system and was served on Plaintiff Paula Fisher, pro se, by email at paula10000@yahoo.com, pursuant to the Federal Rules of Civil Procedure and Local Rules.

/s/ John A. Koepke

## CERTIFICATE OF CONFERENCE

I certify that counsel for SISCO conferred with Plaintiff Paula Fisher, who is proceeding pro se, regarding the relief requested in this motion on September 10, 2026, at the Pre-Motion Conference before Magistrate Peter Bray, and Plaintiff stated that she opposes the motion.

/s/ John A. Koepke